**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**JAMES SCOTT MAYO,**

**Petitioner,**

**v.**                                              **Case No. 4:16cv732-MW/CAS**

**FLORIDA DEPARTMENT
OF CORRECTIONS SECRETARY,**

**Respondent.**
_____/

**REPORT AND RECOMMENDATION TO DENY § 2254 PETITION**

On November 17, 2016, Petitioner James Scott Mayo, proceeding

pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C.

§ 2254.   ECF No. 1.   On April 21, 2017, Respondent filed an answer and

exhibits.   ECF No. 8.   Petitioner has not filed a reply, although he was

given the opportunity to do so.   *See* ECF No. 12; *see also* ECF No. 19.

The matter was referred to the undersigned United States Magistrate

Judge for report and recommendation pursuant to 28 U.S.C. § 636 and

Northern District of Florida Local Rule 72.2(B).   After careful consideration

of all issues raised, the undersigned has determined that no evidentiary

hearing is required for disposition of this case.   *See* Rule 8(a), R. Gov.

§ 2254 Cases in U.S. Dist. Cts.   For the reasons stated herein, the

pleadings and attachments before the Court show Petitioner is not entitled

to federal habeas relief, and this § 2254 petition should be denied.

## Background and Procedural History

On September 14, 2009, by information filed in Leon County Circuit

Court case number 09-CF-2837, the State of Florida charged Petitioner

James S. Mayo with two counts in of sexual activity with 16- or 17-year-old

person, a second degree felony in violation of section 794.05, Florida

Statutes, in connection with events that occurred on or about August 5,

2009.   Ex. B at 8.[1]   Mayo proceeded to a jury trial before Judge Angela

Dempsey and, on September 22, 2010, the jury returned a verdict finding

him guilty on both counts.   Ex. B at 48; Ex. D at 207-09.   Mayo did not

testify during the trial.   Ex. D at 26-27, 175-76.   At proceedings held

January 11, 2011, Judge Dempsey adjudicated Mayo guilty and sentenced

him to twelve (12) years in prison on the first count and five (5) years of

sexual offender probation on the second count, to run consecutive, with

credit for time served.   Ex. B at 77-87.

---

[1]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's answer, ECF No. 8.

Mayo appealed his judgment and sentence to the First District Court of Appeal (DCA), assigned case number 1D11-269.   *See* Exs. F (Initial Brief), G (Amended Initial Brief), H (Answer Brief), I (Reply Brief).   On October 4, 2012, the First DCA per curiam affirmed the case without a written opinion.   Ex. J; <u>Mayo v. State</u>, 97 So. 3d 828 (Fla. 1st DCA 2012) (table).

On February 14, 2013, Mayo filed a motion for post-conviction relief in the state trial court, pursuant to Florida Rule of Criminal Procedure 3.850, alleging two claims of ineffective assistance of trial counsel.   Ex. K at 1-50.   On October 6, 2014, the state post-conviction court, Judge Terry P. Lewis, conducted an evidentiary hearing, during which Mayo was represented by counsel.   Ex. K at 59-60, 84-150.   The court denied post-conviction relief by order rendered October 20, 2014.   Ex. K at 70-72. Mayo filed a motion for rehearing, *id.* at 73-74, which the court denied on January 26, 2015, *id.* at 82-83.

Mayo appealed the order denying post-conviction relief to the First DCA and filed an initial brief in case number 1D15-205.   Ex. M.   The State filed an answer brief, Ex. N, and Mayo filed a reply brief, Ex. O.   The First

DCA per curiam affirmed the case without a written opinion on March 31,

2016.   Ex. P; Mayo v. State, 189 So. 3d 763 (Fla. 1st DCA 2016) (table).

The mandate issued April 26, 2016.   Ex. P.

As indicated above, Mayo filed a § 2254 petition in this Court on

November 17, 2016.   ECF No. 1.   He raises two grounds:

> (1)   (A)   Ineffective Assistance of Counsel for Proceeding to
> Trial on a Faulty Theory of Defense."   *Id.* at 3.
>
> (B)   "Ineffective Assistance of Counsel for Unilaterally
> Rejecting State's Favorable 8-Year Plea Offer without
> Conveying Offer to Petitioner – Based on Faulty Legal
> Theory."   *Id.*
>
> (2)   "Petitioner's Counsel was Ineffective for Failure to
> Challenge the Admissibility of the Petitioner's Confession to
> Police Which was Obtained Through Coercive Police
> Tactics."   *Id.* at 18.

Respondent filed an answer, with exhibits.   ECF No. 8.   Mayo filed a

reply.   ECF No. 12.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody.   Section 2254(d)

provides, in pertinent part:

Case No. 4:16cv732-MW/CAS

An application for a writ of habeas corpus on behalf of a person
in custody pursuant to the judgment of a State court shall not
be granted with respect to any claim that was adjudicated on
the merits in State court proceedings unless the adjudication of
the claim –

(1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in
the State court proceeding.

28 U.S.C. § 2254(d).   *See, e.g.,* Cullen v. Pinholster, 563 U.S. 170, 180-83

(2011); Gill v. Mecusker, 633 F.3d 1272, 1287-88 (11th Cir. 2011).   "This is

a 'difficult to meet' and 'highly deferential standard for evaluating state-

court rulings, which demands that state-court decisions be given the benefit

of the doubt.'"   Cullen, 563 U.S. at 181 (quoting Harrington v. Richter, 562

U.S. 86, 102 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

This Court's review "is limited to the record that was before the state court

that adjudicated the claim on the merits."   *Id.*

For claims of ineffective assistance of counsel (IAC), the United

States Supreme Court has adopted a two-part test:

First, the defendant must show that counsel's performance was
deficient.   This requires showing that counsel made errors so

> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.   Second,
> the defendant must show that the deficient performance
> prejudiced the defense.   This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).   To demonstrate

ineffectiveness, a "defendant must show that counsel's performance fell

below an objective standard of reasonableness."   *Id.* at 688.   To

demonstrate prejudice, a defendant "must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different."   *Id.* at 694.   "A reasonable

probability is a probability sufficient to undermine confidence in the

outcome."   *Id.*   For this Court's purposes, importantly, "[t]he question 'is

not whether a federal court believes the state court's determination' under

the Strickland standard 'was incorrect but whether that determination was

unreasonable – a substantially higher threshold.'"   Knowles v. Mirzayance,

556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473

(2007)).   "And, because the Strickland standard is a general standard, a

state court has even more latitude to reasonably determine that a

defendant has not satisfied that standard."   *Id.*   It is a "doubly deferential

judicial review that applies to a Strickland claim evaluated under the

§ 2254(d)(1) standard." *Id.*

## <u>Ground 1</u>: IAC – (A) Defense Theory and (B) Plea Offer

In his first ground, Petitioner Mayo raises two sub-claims of

ineffective assistance of counsel.   First, Mayo asserts defense counsel

provided ineffective assistance for proceeding to trial on a "faulty theory of

defense," based on the consent of the victim.   ECF No. 1 at 3.   Second,

Mayo asserts defense counsel provided ineffective assistance by rejecting

an eight-year plea offer without conveying the offer to him.   *Id.*

Respondent indicates Mayo fully exhausted this ground.   ECF No. 8

at 6.   Indeed, Mayo presented this ground in state court as the first point in

his Rule 3.850 motion.   Ex. K at 1-31; *see* Ex. M at 5, 10.   The state post-

conviction court denied the ground, making the following findings:

> The Defendant seeks relief by his motion on the grounds
> that his attorney provided ineffective assistance at trial.   The
> essence of the Defendant's claim is that his attorney did not
> timely inform him of a plea offer from the State, that the
> attorney rejected that plea offer without the Defendant's
> knowledge or consent, and that he advised the Defendant to go
> to trial because he had a "silver bullet" defense based on the
> consent of the victim.   The Defendant says that this purported
> "silver bullet," was nothing of the sort, but rather was a doomed
> strategy because of a misunderstanding or misinterpretation of
> the case law by trial counsel.
>
>         . . . .

As to the first ground, I am hindered in my fact finding by virtue of the fact that trial counsel is deceased. His son, who practiced with him at the time, had an incomplete memory of the case and could remember very few details. Considering all of the evidence presented, and the court file, I conclude that the Defendant has not met his burden in proving first, that the State extended a plea offer to trial counsel. The prosecutor on the case, Ms. Ray, testified that she had no memory of making such an offer, had no reason or motive to do so, that nothing in her file or her notes suggested that such an offer had been conveyed. There was also no correspondence or notes concerning conversations she may have had with the victim which would have been a prerequisite to her extending a plea offer.

The Defendant's version of the conversation, that his attorney told him on the eve of jury selection that the State had made an offer of 8 years but that he, the attorney, had turned it down without consulting the client is not believable. Nor is his assertion that his counsel assured him that he had a "silver bullet" that would get a judgment of acquittal or knock the case out before it even got to trial. What is more likely is that trial counsel, faced with a very strong case against his client, urged him to consider negotiating for a plea and suggested that he approach the prosecutor with such an offer to plea to 8 years, which the Defendant refused.

And rather than a "silver bullet," Defendant's trial counsel did the best he could with what he had. I agree with the Defendant's current counsel that the defense of consent was a loser but it was all trial counsel had. And he argued it vigorously. And though I think the trial judge was correct in denying the request for the jury instruction, it was at least arguable, and preserved a possible appellate issue. In short, I find that the Defendant heard what he wanted to hear and has reconstructed his memory of the events in an effort to place blame for his conviction on his attorney rather than himself.

Ex. K at 71-72.   On appeal, the First DCA affirmed without a written opinion.   This constitutes a ruling on the merits and is entitled to AEDPA deference.   *See* 28 U.S.C. § 2254(d); <u>Harrington</u>, 562 U.S. at 98-100.

The state court record supports the post-conviction court's finding that the State did not make a plea offer as described by Mayo.   The transcript of the evidentiary hearing reflects Mayo's trial counsel, Robert Harper, Jr., died in 2013.   Ex. K at 107, 121.   His son, Robert Harper III, also represented Mayo during the trial.   *Id.* at 107.   Robert Harper III testified at the evidentiary hearing that he did not recall whether there had been a plea offer made shortly before Mayo's trial, *id.* at 108, and he did not recall "any sort of plea offer being conveyed," *id.* at 109.   *See id.* at 115.   He did recall that Mayo "was pretty adamant about proceeding to trial as was his family."   *Id.* at 108-09.   Robert Harper III testified that his understanding was "that Mr. Mayo was not interested in accepting any sort of plea offer."   *Id.* at 109.

The trial prosecutor, Kathy Ray, also testified at the evidentiary hearing.   She testified she had reviewed her file and "[t]here is no indication in an email, in any document, in any notes in the file that I ever made a plea offer in the case."   *Id.* at 129.   She explained:

> I would have – if I made a plea offer and it was verbal, I would
> have written it down in my file.   I normally – in a case like this, I
> can't think of a time where I have ever verbally made a plea
> offer, because I would never make a plea offer in a case like
> this without consulting the victim or her guardian, his or her
> guardian.

*Id.*   She also testified:

> I have no independent recollection of Mr. Harper, Jr. or Harper,
> III, ever asking me about a plea offer.   I'm not saying that one
> of them never approached me.   I have no recollection of it and
> did not record it.   It's my belief that had they approached me, I
> would have done what I said earlier. . . .   I would have relayed
> what the offer from the defendant was to Ms. Parmalee [the
> victim advocate] so that she could, again, contact the victim or
> the victim's guardian and review it with them.

*Id.* at 131-32.

The state court record also supports the post-conviction court's

findings regard the defense presented at trial.   In particular, Robert

Harper III testified Mayo's version of the events giving rise to the charges

evolved over time and, at some point, the issue of consent became the

focus of the defense.   Ex. K at 110-11.   He testified:

> It's difficult to articulate clearly, but when we were presented
> with these cases it's a very narrow, very strict area of the law,
> and, for the most part, seems pretty well established with
> regards to the age of the victim and consent and that sort of
> thing.   And so as my father often did, he would get creative.
> And it's my understanding that he was relying on the Acevedo
> case [Acevedo v. Williams, 985 So. 2d 669 (Fla. 1st DCA
> 2008),] to cause some effect to the jury instructions.

*Id.* at 113.   The trial prosecutor, Ms. Ray, also testified about the trial defense:

> I don't remember the exact wording of his defense.   It was something along the lines, if I recall, that because the child had had sex before that she was unchaste and that the instruction that consent wouldn't be a defense wouldn't apply to her.

*Id.* at 132.   Likewise, the trial transcript reflects the defense theory based on the <u>Acevedo</u> case.   *See* Ex. D at 10-15, 169-79.

Petitioner Mayo has not shown that the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2).   Accordingly, this ground should be denied.

### <u>Ground 2</u>:   IAC – Motion to Suppress Confession

In his second ground, Petitioner Mayo asserts that defense counsel provided ineffective assistance by not challenging the admissibility of his confession to police, which Mayo asserts was obtained through "coercive police tactics" and thus not voluntary.   ECF No. 1 at 18.   Specifically, Mayo asserts Sergeant Kenneth Ganey threatened Mayo's employment with the Leon County Sheriff's Office (in the maintenance department) if

Mayo did not speak with police, Mayo told his trial counsel of the threat, and his trial counsel did not file a proper motion to suppress Mayo's confession.   *Id.* at 18-19.

As Mayo and Respondent indicate, Mayo did not present this ground in state court.   *See id.* at 23; ECF No. 8 at 7.   Accordingly, this ground is procedurally defaulted.   Petitioner cites Martinez v. Ryan, 566 U.S. 1 (2012), and argues he should be allowed to present this claim for federal habeas review because he "was not counseled, or was ineffectively counseled in his state initial review collateral proceeding."   ECF No. 1 at 23.

As Respondent indicates, the state post-conviction court appointed counsel to represent Petitioner on April 9, 2014.   Ex. K at 67.   Although Petitioner had already filed his Rule 3.850 motion at that point, as Respondent points out, the evidentiary hearing did not occur until October 6, 2014, and thus an amended Rule 3.850 motion could have been filed if counsel had believed this claim should be raised.   Ex. K at 84; see ECF No. 8 at 7.

In Martinez, the U.S. Supreme Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish

cause for a prisoner's procedural default of a claim of ineffective assistance at trial."   566 U.S. at 9.   In particular, "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."   *Id.* at 17.   To overcome the default, Petitioner must show "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit."   *Id.* at 14.

Petitioner must also show he was actually prejudiced by the default. Coleman v. Thompson, 501 U.S. 722, 750 (1991). To establish actual prejudice, and permit federal habeas review of the defaulted claim, a petitioner must show there is at least a reasonable probability the result of the proceeding would have been different.   *See, e.g.*, Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003).

Here, a review of the state court record reflects that the underlying ineffective-assistance-of-trial-counsel claim is not a substantial one. Notably, Petitioner Mayo's trial counsel did file a motion to suppress his

confession.   The basis of the motion to suppress was not police coercion;

rather, the motion concerned the sufficiency of the warnings and

advisement of rights provided pursuant to Miranda v. Arizona, 384 U.S. 436

(1966).   Just prior to trial, defense counsel told the judge, "We've got a

motion to suppress that's filed with the publication of the Powell opinion[,

Florida v. Powell, 130 S. Ct. 1195 (2010)].   It may be moot.   We filed it

first under state grounds and then Powell seems to be dispositive of the

motion, Your Honor."   Ex. D at 4.   The following transpired on the record:

> THE COURT:   So I don't – are you still arguing your motion?   I
> don't know what you mean by, now it's moot?
>
> MR. HARPER [defense counsel]:   Well, it – what we said was
> that the warning given by Florida authorities wasn't sufficient.
> And it looks to me pretty clear that the United States Supreme
> Court said it is clear.
>
> THE COURT:   Okay.   So, you're basically conceding that
> based on Powell that I should deny your motion?
>
> MR. HARPER:   Yes, ma'am.   I – to the extent that there is an
> issue left under state law I would like to preserve that, but I
> think you are bound to deny the motion.
>
> THE COURT:   Okay.   Okay.   So, based on the Powell case
> I'm going to deny the motion to suppress.

Id. at 4-5.   The judge then asked whether the prosecutor had any pretrial

issues and the following transpired:

> MS. RAY [prosecutor]:   I just want to make sure I understand as far as that motion goes now.   I'm not going to have to do any proffers or anything else outside of the jury at this point with regard to the defendant's statement.   Is my understanding?
>
> THE COURT:   Is there any reason that we would need to do that, Mr. Harper?
>
> MR. HARPER:   Your Honor, my understanding is, and this may not be right, but I thought independent of a challenge like this that the State had to prove a voluntary statement before it could be tendered to a jury.
>
> MS. RAY:   Absolutely.   I'm just asking if I'm being required to do anything.   Any sort of proffer outside the presence of the jury I certainly have to establish the predicate, and I understand that, before introduction of the statement.

*Id.* at 5-6.   Thus, even though defense counsel did not file a motion to suppress the confession on the specific basis Petitioner now asserts, defense counsel did make sure the prosecutor had to show the confession was voluntarily made before it could come before the jury.

Indeed, before Sergeant Ganey testified in front of the jury, the prosecutor conducted a proffer during which he testified that he worked as a sergeant with the Violent Crimes Unit of the Leon County Sherriff's Office. Ex. D at 87.   Sergeant Ganey testified he knew Mayo was employed with the sheriff's office in a maintenance position and then "ended up investigating a case involving him."   *Id.*   He further testified on proffer:

Q   Okay.   And was the defendant actually working at the time that he was interviewed by you?

A   He was at work.   We had to find him that morning, if memory serves me correct. . . .   [W]e located him and brought him to the office or asked him to accompany us to the office.

Q   Okay.   And were you in an actual interview room at the [LCSO] when you spoke with him?

A   Yes, ma'am.

Q   And what did you tell him when he went in there?

A   I told him that we had had an allegation involving him and asked him would he come and answer some questions and he said he would.

Q   Did you tell him he had to come and answer questions?

A   No, ma'am.

Q   Okay.   And, I mean, did he appear to understand what you are telling him?

A   I explained to him he was not under arrest.   He was free to leave.   But it – further down the line, it probably would cause him some issues at work.

Q   You told him that?

A   Yes, ma'am.

Q   Okay.   And did he agree to come and talk to you?

A   Sure.

Q   All right.   And did you tell him what you were investigating?

A   Yes, ma'am.

Q   And was that after you had asked him if he would come talk to you or before?

A   It was after.

Q   Okay.   And what did you tell him you were investigating?

A   I told him we had allegations that he had been having sexual relations with a juvenile.

Q   Okay.   I'm sorry.   I want to make sure I understand your testimony.   You told him that those were the allegations after you told him he wasn't under arrest and he was free to go?

A   When he – taking him to my office or to the violent crimes office, I explained to him that he was not under arrest, that he was free to leave, if he so chose to, but it would probably cause him some issues at work.   Then I went into, once we got into the interview room, and explained to him what the allegations were.

Q   Okay.   Now, you said could affect his work.   Is that correct?   Those weren't your exact words, but –

A   Right.   And it – the command staff wanted this cleared up before he continued his employment, or the investigation.

. . . .

Q   Okay.   Well, I guess, I want to make sure I understand. Did you threaten him and say, Look, you are going to lose your job if you don't come talk to us about this?

A   No, ma'am.

Q   Based on what you told him, did he say anything that you perceived him to think his job was in jeopardy if he didn't talk to you?

A   No, ma'am.

*Id.* at 88-91.   Sergeant Ganey explained he did not handcuff Mayo, he did not shackle him to the table, and Mayo was not under arrest at that point.

*Id.* at 91.   Sergeant Ganey testified Mayo denied the allegations.   *Id.*   At some point, Sergeant Ganey advised Mayo of his constitutional rights and gave him <u>Miranda</u> warnings.   *Id.* at 92-93.   Mayo signed a written waiver, State's Exhibit 4.   *Id.* at 93-94.   The interview was videotaped, including the <u>Miranda</u> warnings, State's Exhibit 5A and 5B.   *Id.* at 94.   The video was played during the proffer.   *Id.* at 98-115.   Significantly, the following occurred on the record:

MS. RAY:   Defense counsel has asked that I pause it [the video of Mayo's interview] and he would like to put something on the record.

THE COURT:   Okay.   Mr. Harper?

MR. HARPER:   Your Honor, I discussed this with – with the defendant before standing in making this suggestion.   But **we don't see any evidence that this statement has been coerced or threatened or – or beaten out of Mr. Mayo, or, otherwise, improperly obtained**.   It's my understanding how – that the entire contents are going to be admitted.   Is that right?

MS. RAY:   Yes.

MR. HARPER:   Maybe not necessarily published, but, at least, admitted, which would satisfy our concern about the rule of completeness.   So, we are prepared to go forward with the evidence with the understanding that **the statement is admissible** –

THE COURT:   Okay.   So –

MR. HARPER:   -- **insofar as the finding of free and voluntariness**.

THE COURT:   Okay.   And **you've had an opportunity to discuss that with your client**?

MR. HARPER:   I have.

THE COURT:   Okay.

MR. HARPER:   **And he concurs with that**.   And, of course, we've had this pretrial and had a chance to go over it in the office before.

THE COURT:   Okay.   But, I guess, it was helpful for you to listen.   And I think we were getting close to the point where the Miranda was going to be read.   I guess, it was helpful for you all to listen to it one more time again.   But you're stipulating to its admissibility, Mr. Harper?

MR. HARPER:   Yes, ma'am.

*Id.* at 115-16 (emphasis added).   Defense counsel thus affirmatively

indicated on the record the belief that Mayo's statement was voluntarily

made and admissible and, further, that Mayo himself agreed with this

assessment.

Based on the foregoing, Petitioner Mayo's underlying IAC claim is not substantial.   Further, Petitioner has not demonstrated prejudice by the procedural default.   This ground should be denied.

## Conclusion

Petitioner James Scott Mayo is not entitled to federal habeas relief. The § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.   28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.   *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## <u>Recommendation</u>

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).   It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on May 1, 2018.

**S/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).   A copy of the objections shall be served upon all other parties.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.   Fed. R. Civ. P. 72(b)(2).   Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**